IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

U. S. STEEL MINING COMPANY, LLC,                No. 00 CV 1758

                    Plaintiff

          v.                                    Terrence F. McVerry
                                                District Judge

WILSON DOWNHOLE SERVICES,

                    Defendant

**BRIEF OF U.S. STEEL MINING COMPANY IN SUPPORT OF
PETITION TO VACATE ARBITRATION AWARD AND IN RESPONSE TO
WILSON DOWNHOLE SERVICE'S MOTION TO CONFIRM AWARD**

_____

Petitioner, U. S. Steel Mining Company, LLC (hereinafter "USM"), by

undersigned counsel, files this Brief in Support of Petition to Vacate Arbitration Award

and in Response to Wilson Downhole Service's Motion to Confirm Award.

**I. Statement of the Case**

In early 1998, Wilson Downhole Services (hereinafter "Wilson Downhole")

drilled three wells at USM's Pinnacle Mine in Pineville, West Virginia.  USM paid

Wilson Downhole the sum of $1,046,862.38 for drilling the three wells.  Wilson

Downhole's claim for an additional $227,924.73 could not be resolved amicably, and

litigation ensued.  The significant events of that litigation, particularly in connection with

the dual mediation – arbitration that is the focus of the instant proceedings, are detailed in

the 'Procedural Background' of USM's Petition to Vacate Arbitration Award (hereinafter

"Petition") and incorporated by reference in this Brief.  Document Number 27, at 2 - 4.

In effect, the parties agreed to resolve Wilson Downhole's contract claim through an informal arbitration at which no testimony was offered and no record was made. The three agreements providing for and governing the parties' informal arbitration [Exhibits B, C and D to Petition] are identified and referred to collectively in this Brief as the "Arbitration Agreements." The attorneys for each party presented and argued their respective client's position through the Joint Exhibit Book prepared and presented by the parties; deposition transcripts; and post-mediation offers and supporting argument. [1]

Wilson Downhole's claim was not settled in mediation, and each party submitted its 'best and final' offer to the arbitrator, Harry L. Griffin, Jr. (hereinafter "Mr. Griffin") on January 27, 2006. Wilson Downhole requested payment of $294,333.52, consisting of damages of $165,821.70 and interest of $128,511.82. Reiterating its position that Wilson Downhole was "not entitled to any moneys beyond the $1,046,682 paid in 1998 for the drilling ….." USM offered payment of $56,000, including interest, in the spirit of the mediation. [2]

On March 29, 2006, Mr. Griffin issued a final Award of $294,333.52 in favor of Wilson Downhole. USM petitioned the Court to vacate the Award on July 3, 2006, within the requisite ninety-day period computed by Rule 6 of the Federal Rules of Civil Procedure. Document Number 27. Wilson Downhole then filed a Motion to Confirm

---

[1] In ruling upon USM's Petition to Vacate Arbitration Award, it is not necessary for the Court to review the voluminous documents provided to Mr. Griffin. Therefore, USM has not made the Exhibit Book a part of the record in these proceedings. The Exhibit Book can be submitted, as the Court may direct.

[2] In its Rationale for Best and Final Offer, USM demonstrated that the greatest part of the $165,821.70 demanded by Wilson Downhole had been paid by USM, or was not owed at all. [Exhibit F to Petition, at 7] The $79,890 Wilson Downhole contended to be owed for footage drilled, assuming that it was owed, was compromised by USM's offer to pay $40,000, together with interest of 10 per cent interest for one-half of the eight years of litigation for which Wilson Downhole's litigation tactics were responsible. *Id.* at 8, 9.

Arbitration Award on July 11, 2006, to which USM responded on July 17, 2006.
Document Numbers 28 and 29.

In support of its position, Wilson Downhole has filed a 'Consolidated Response to
U.S. Steel's (sic) Petition to Vacate Arbitration Award and Reply Brief to Petitioner's
Response in Opposition to Motion to Confirm Arbitration Award.' Document Number
30. USM files this Brief in explanation of its position in this case.

## II. USM Properly and Timely Filed Its Petition To Vacate Award

### A. Right of Appeal

USM has appealed the Award on grounds of corruption, fraud and undue means
under the Federal Arbitration Act and the Arbitration Agreements [9 U.S.C.A. § 10 (a)
(1); Exhibit B to Petition, ¶ 3] and on separate, judicially created non-statutory grounds.
These Third Circuit non-statutory grounds permit review and vacation of the Award if the
Award (1) is irrational; (2) manifestly disregards the law; or (3) fails to draw its essence
from the parties' Arbitration Agreement. *Swift Industries, Inc. v. Botany Industries, Inc.*,
466 F.2d 1125, 1134 (3d Cir. 1972); *Tanoma Mining Company v. Local Union No. 1269*,
896 F.2d 745, 749 (3d Cir. 1990); *News America Publications, Inc. v. Newark
Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990).

In disregard of Third Circuit law, Wilson Downhole argues that USM has waived
appeal on these <u>non-statutory</u> grounds by the limitation on <u>statutory</u> grounds found in
paragraph 3 of the Arbitration Agreement. Paragraph 3 contains a waiver of "any appeal
pursuant to grounds provided for in the FAA, except for the grounds specifically set forth
above." Exhibit B to Petition, ¶ 3.

3

While the parties agreed to narrow the statutory grounds of appeal, there is no suggestion that USM intended to forego appeal of an improper and unfair Award on other statutory grounds or on non-statutory grounds. To the contrary, the relevant provisions of the Arbitration Agreements manifest both parties' clear intent to permit the judicial review sought by USM.  Ultimately, the court is guided by the parties' intent. *Roadway Package System, Inc. v. Kayser*, 257 F.3d 287, 293 (3d Cir. 2001).

By agreeing to waive certain statutory grounds "provided for in the FAA," USM did not waive appeal or review of the Award on judicially created, non-statutory grounds. [3]  These grounds exist, and are applied by the courts, even if the statutory provisions of the Federal Arbitration Act are not applicable.  *See National Fire Insurance Company v. Sippel Development Company, Inc.*, 2006 WL 1670201, at 2 (W.D. Pa. 2006), *citing  Duferco International Steel Trading v. T. Clavness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003).

Wilson Downhole cannot restrict review of an arbitration award, or thwart exercise of the Court's power to vacate the Award by arguing, in effect, that USM agreed to waive such review.  USM did not – indeed cannot – 'contract away' judicial review or limit judicial discretion, which are the established and well-accepted function of the Court.

Moreover, the meaning and extent of statutory limitation on appeal contained in paragraph 3 of the principal Arbitration Agreement [Exhibit B to Petition] must be interpreted in light of other relevant provisions of the Arbitration Agreements.  Read together, these provisions demonstrate that USM did not waive its right of appeal of the

---

[3]  The scope of permissible appeal is academic in light of the fraud and corruption that characterized the arbitration and produced the unfair and irrational Award.

Award on recognized judicial grounds or on the critical statutory grounds of corruption, fraud and undue means of section 10 (a)(1) of the Federal Arbitration Act. USM possesses and has the right to appeal the Award, <u>but for</u> those grounds set forth in section 10 (a)(3) (misconduct of arbitrator in refusing to postpone the hearing or in refusing to hear evidence, or any other misbehavior prejudicing the rights of any party, and in section 10 (a)(4) (arbitrators exceeding or imperfectly executing their powers) of the Act.

Paragraph 1(D) of the Arbitration Amendment [Exhibit C to Petition] states, in part, that "….. The Arbitrator's decision shall be final and unappealable." Wilson does not analyze these words or indicate in its Brief how they preempt appeal of the Award. Wilson implicitly asks the Court to conclude that these words constitute USM's waiver of appeal on any ground. Wilson Downhole Brief, at 2. By comparison to the 'final and unappealable' language of paragraph 1(D), paragraph 3 of the original Arbitration Agreement [Exhibit B to Petition] contains substantially the same words, describing the Award as "final and binding upon both parties ……" Paragraph 3 goes on to acknowledge the right of appeal, saying that "Any appeal from the Award shall be made to the Court ……"

In a case involving interpretation of an arbitration provision, the 'final and binding' language of the instant Arbitration Agreement has been found to contemplate appeal under the Federal Arbitration Act. Further, the explicit acknowledgement of the right of appeal contained in paragraph 3 of the Arbitration Agreement has been found to show that "the right of some form of appeal was understood by the parties to exist." *Janney Montgomery Scott Inc. v. Oleckna*, 2000 WL 623231, at 3 (E.D. Pa. 2000).

The right of appeal is confirmed by paragraph 2 of the Arbitration Amendment [Exhibit C to Petition], which provides that "A copy of the Agreement may be filed with the United States District Court of the Western District of Pennsylvania if necessary to enforce any rights of any party." (emphasis added). The word 'rights' is not restricted to one party, or tied exclusively to confirmation of the Award, as would be the case if, in fact, USM had intended to waive appeal. Clearly, this paragraph 2 of the Arbitration Amendment and other express provisions of the three Arbitration Agreements establish the intention of both parties to appeal from an improper Award and demonstrate USM's right of appeal on both statutory and judicial, non-statutory grounds, e.g., irrationality of the Award.

Conversely, these provisions deny Wilson Downhole's contention that entry of judgment on the Award is automatic under paragraph 14 of the Arbitration Agreement. Exhibit B to Petition. Wilson Downhole argues in its Brief, at 4, that it is entitled to judgment by virtue of USM's refusal to satisfy the Award within ninety days of the March 29 Award and its own filing of a Motion to Confirm within one year of the Award. In the very next sentence, Wilson Downhole expressly concedes that confirmation is not automatic and, most critically, that USM possesses – and has not waived – a right of appeal. Wilson Downhole states that "......the Court is obligated to confirm the Award, unless USM shows that it is entitled to vacatur." *Id.* (emphasis added).

### B. Timely Filing of Appeal

The Petition was timely filed within the three-month period mandated by section 12 of the Federal Arbitration Act, 9 U.S.C.A. Mr. Griffin did not issue an effective Award until March 29, 2006. Earlier, on March 10, Mr. Griffin had advised the parties

that he accepted Wilson Downhole's final offer of $294,333.52. The March 10 letter

contained no reasoning or explanation of his decision, as was required by paragraph 14 of

the parties' Agreement of Reference to Arbitration. Exhibit B to Petition, at 7. [4] Without

the Mediator's reasoning, the Award was not final. *See, e.g., Warren v. Tacher*, 114 F.

Supp.2d 600 (W.D. Ky. 2000) (three-month limitation does not commence until issuance

of final award).

In response to USM's request for requisite explanation, Mr. Griffin offered his

reasoning in his letter to the parties, dated March 29. Exhibit I to Petition. Notably,

Wilson Downhole did not challenge USM's request for explanation, or the position

expressed by USM's counsel in the March 20, 2006 letter that

> Without such explanation, I respectfully submit that your selection of
> Wilson Downhole's figure does not constitute an award, and is not effective
> as an award on which judgment can be entered.

Exhibit H to Petition.

Wilson Downhole's silence is a tacit admission that, without requisite

explanation, Mr. Griffin's March 10 letter selecting Wilson Downhole's offer was not a

final or valid Award. Wilson Downhole cannot now argue with the slightest credibility

that the Award was entered on March 10 for purpose of measuring the ninety-day

appellate period.

USM's counsel received Mr. Griffin's March 29 letter containing an effective

Award on April 3, 2006. This fact and other material facts are set forth in an Affidavit in

---

[4] In pertinent part, paragraph 14 required that "….. Any Award shall be in writing signed by the arbitrator stating the reasons upon which the Award or decision is based and offering sufficient explanation of the Award or decision and the arbitrator's reasoning for such Award or decision. In the arbitrator's exclusive discretion, the final Award of the arbitrator may, but need not be, accompanied by separate findings of act or conclusions of law."

Support of Petition to Vacate Award (hereinafter "USM Affidavit") submitted with this Brief and incorporated by reference. Pursuant to section 12 of the Federal Arbitration Act, the three-month limitation period did not begin to run until April 3, when the Award was delivered. Computed from April 3, the ninetieth day was Sunday, July 2. USM filed the Petition to Vacate Award with the Court and served Wilson Downhole's counsel on Monday, July 3.

### III.    Standard of Review and Grounds for Vacatur

As reflected in the Arbitration Agreements, USM and Wilson Downhole bargained for mediation and, failing settlement through mediation, a 'baseball arbitration' Award by which Mr. Griffin would adjudicate Wilson Downhole's claim for contract moneys.

This Court has recognized that the mediation process "affords to litigants an opportunity to articulate their positions and to hear, first hand, both their opponent's version of the matters in dispute and a natural assessment of the relative strengths of the opposing positions. *Sheldone v. Pennsylvania Turnpike Commission*, 104 F. Supp. 2d 511, 513 (W.D. Pa. 2000).

USM bargained for, and was entitled to, this open and honest exchange with both Wilson Downhole and Mr. Griffin and a fair resolution of Wilson Downhole's contract claim. This bargain was the essence of the Arbitration Agreements and the dual mediation – arbitration proceeding. [5] An Award produced by fraud and corruption is antithetical to the fair and open adjudication sought and bargained for by the parties.

---

[5] The Mediation Agreement [Exhibit D to Petition] underscored the nature and purpose of the proceedings:

Arbitration awards are given deference, because the awards – and the underlying arbitration agreements – represent the bargain of the parties, not because of the authority of the arbitrator or some presumptive legal acuity he or she possesses. *Brentwood Medical Associates v. United Mine Workers of America*, 396 F.3d 237, 239 (3rd Cir. 2005). [6] Deference to the Award does not mean, however, the Court must rubber stamp the Award, or overlook the irrationality of the Award or the fraud and manifest errors that characterized the USM – Wilson Downhole arbitration. *Matteson v. Ryder System, Inc.*, 99 F.3d 108, 113 (3d Cir. 1996).

To the contrary, the recognized function of this Court is to determine whether the Award is derived from USM's bargain with Wilson Downhole, thus 'drawing its essence' from the Arbitration Agreements. *Brentwood Medical Associates*, 396 F.3d at 240; *Pennsylvania Power Company v. Local Union No. 272 of the International Brotherhood of Electrical Workers, AFL-CIO*, 276 F.3d 174, 175 (3d Cir. 2001). [7]

In addition to fraud, corruption and other significant problems compelling vacatur under the Federal Arbitration Act, the Third Circuit has ruled that courts may vacate an

---

1. To achieve a mutually acceptable resolution, the Mediator, the parties and their counsel will work to ensure that each party understands the facts asserted and the contentions of all parties.

2. In order for the mediation to be successful, open and honest communication is essential. Accordingly the parties are urged to make complete, candid and accurate disclosure of all matters relevant to the underlying dispute. (emphasis added).

[6] The judicial philosophy is that 'full-blown judicial review' of an arbitration decision would annul the bargained for arbitration and the arbitrator's construction of the underlying commercial agreement sought by the parties, and replace it with a judicial interpretation that was not bargained for or desired by the parties. *Stroehmann Bakeries, Inc. v. Local 776, International Brotherhood of Teamsters*, 969 F.2d 1436, 1441 (3d Cir. 1992).

[7] An award draws it essence from the arbitration agreement, if its interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. *Brentwood Medical Associates*, 396 F.3d at 241.

award that does not draw its essence from the arbitration agreement, or that results from

the arbitrator's manifest misinterpretation and misapplication of the arbitration

agreement. *Major League Umpire Association v. American League of Professional*

*Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004), cert. denied, 543 U. S. 1049, 125 S.

Ct. 861 (2005); *News America Publications, Inc. v. Newark Typographical Union, Local*

*103*, 918 F.2d 21, 24 (3d Cir. 1990). [8]

      Similarly, an award may be vacated, if it is irrational or unsupported by principles

of valid contract construction. *Exxon Shipping Company v. Exxon Seamen's Union*, 993

F.2d 357, 360 (3d Cir. 1993); *Pennsylvania Power Company v. Local Union No. 272 of*

*the International Brotherhood of Electrical Workers, AFL-CIO*, 276 F.3d at 178.

### V. Reasons for Vacatur

      In the March 29 Award, Mr. Griffin set forth in unequivocal language his

principal reasons for the Award:

- the credibility of the witnesses who were present at the mediation;

- a question of fact remained as to whether the payment of the purported dispositive change order was an accord and satisfaction of all Wilson's claims, absent express language in the change order to that effect;

- evidence that Wilson paid its subcontractor on a similar basis as it claimed against USS (sic);

- in view of the amounts claimed, whose offer appeared the more reasonable.

Exhibit I to Petition.

---

[8]  The 'essence of the agreement ' test originated in labor arbitration cases in which the arbitrator was asked to interpret the Collective Bargaining Agreement between union and management. The Third Circuit has long permitted application of the 'essence' test to review of awards in commercial arbitration cases. *Swift Industries, Inc. v. Botany Industries, Inc.*, 466 F.2d at 1129 - 1131, *citing Ludwig Honold Manufacturing Company v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969).

### A.  Irrationality of the Decision

The utter irrationality and arbitrariness that fatally tainted the Award are apparent on the face of the Award and in three of the four reasons offered by Mr. Griffin in support of the Award. [9]

 Wilson Downhole seeks to minimize the clear irrationality and unfairness of Mr. Griffin's decision by noting, at 3, that these reasons were 'some' of Mr. Griffin's reasons for ruling in favor of Wilson Downhole.  When given the opportunity to explain his decision, Mr. Griffin stated only these four reasons.  Whether there may have been another nine or ninety reasons for the Award, the Court cannot speculate as to other reasons, or whether such reasons might have shown the Award to be in some way proper or to some degree rational.  The stated reasons were so grievously wrong and irrational that the Award was tainted irreparably.

Mr. Griffin first indicated that he took into account and weighed "the credibility of witnesses, who were present at the mediation. "  Mr. Griffin heard no witness testimony in the course of the mediation.  There was no questioning or cross-examination of any person.  In USM's ex parte sessions with Mr. Griffin during the mediation, neither of USM's representatives, Robert Hartlaub or David Trader, made any statement to Mr. Griffin and were asked no questions by Mr. Griffin regarding Wilson Downhole's claim.  USM Affidavit, ¶ 12.

---

[9] Mr. Griffin's uncertainty as to the existence of 'accord and satisfaction' was not a rational basis for the Award.  Unlike Mr. Griffin's other three reasons, however, the error inherent in this rationale is not clear on the face of the Award.  The absence of a record prevents the Court from ruling on such error.

If ex parte statements made by either of Wilson Downhole's representatives, Paul Conti or Mary Ann Black, were considered particularly probative, or if their statements created an issue of their credibility or of the credibility of USM's representatives, Mr. Griffin was compelled to bring such statements to USM's attention and to afford USM opportunity to rebut information provided and to address credibility issues. Mr. Griffin did not do so, nor did he ever suggest to USM that he would make a credibility determination. *Id.*, ¶ 13. A baseless credibility determination is demonstrably irrational.

In an equally irrational fashion, Mr. Griffin opined that Wilson Downhole's final offer of $294,333.52 was more reasonable than USM's final offer of $56,000 "in view of the amounts claimed." Only Wilson Downhole asserted a damage claim. Because USM demanded no money from Wilson Downhole, Mr. Griffin had only to determine whether USM was obligated to pay Wilson Downhole additional money and, if so, the amount of the money owed.

Wilson Downhole originally sued USM for $227,924.73, plus interest, in contract damages. In his February 2, 1999 letter to USM, Paul Conti, Wilson Downhole's Senior District Manager (hereinafter "Conti letter"), admitted that Wilson Downhole's claim and principal recovery did not exceed $165,821.70. The Conti letter was submitted to Mr. Griffin as Exhibit 25 in the Joint Exhibit Book and is attached to this Brief as Exhibit J. [10] Notwithstanding the Conti admission, Wilson Downhole's settlement demand exceeded $700,000 at the beginning of the mediation. At the conclusion of mediation on January 19, 2006, the demand was $480,000. USM Affidavit, ¶ 14.

---

[10] To avoid confusion, 'Exhibit J' continues the lettering of USM's Exhibits A through I attached to the Petition to Vacate Arbitration Award [Document Number 27].

Contrary to Mr. Griffin's thinking, these differing amounts did not constitute a presumptive justification of Wilson's claim, nor did these amounts constitute a proper measure of recovery. In no way could the amounts claimed by Wilson Downhole establish a rational basis for the Award. Neither does the fact that USM offered significantly less than the amounts claimed by Wilson Downhole justify selection of Wilson Downhole's much larger final offer, or establish the rationality of that offer.

Where there was no properly considered information or competent 'evidence' to support the Award, it is deemed irrational and must be set aside. *See NF&M Corporation v. United Steelworkers of America*, 524 F.2d 756, 760 (3d Cir. 1975).

The Award is not saved or in any way justified by the significant discretion accorded Mr. Griffin through the mechanism of 'baseball arbitration' to make an Award based on his selection of the 'best and final' offer of one of the parties. Like any arbitrator, Mr. Griffin was obliged to conduct himself honestly and to make a rational and legally sufficient decision based upon the Arbitration Agreements and the facts presented to him. [11] He did not have unfettered discretion, or the power to fashion an award, which was contrary to the plain language and purpose of the Arbitration Agreements. *David Cattle Company v. Great Western Sugar Company*, 393 F. Supp. 1165, 1179 (D. Colo. 1975) (where there is a clear violation of the arbitration agreement, the award is void), *aff'd*, 544 F.2d 436 (10th Cir. 1976), *cert. denied*, 429 U. S. 1094 (1977).

---

[11] In rendering his Award, it appears that Mr. Griffin failed to recognize the substantial change in the proceedings from non-binding, non-adversarial mediation to binding, adversarial arbitration, and the concomitant change in his role as mediator to his role as judge. Binding arbitration compelled a different and more critical assessment of the information adduced by the parties and of the parties' respective contract rights, than would have been necessary in mediation. Mr. Griffin's failure to recognize and act in accordance with his role as arbitrator contributed to an unfair and improper Award.

**B. Fraudulent Concealment of Information**

Mr. Griffin was asked by the parties to determine whether Wilson Downhole was entitled to additional contract moneys for drilling services over and above the $1,046,862.38 previously paid by USM.   In deciding this issue of USM's liability and the amount of contract damages that Wilson Downhole claimed to be owed, Mr. Griffin admitted that he relied on "evidence that Wilson paid its subcontractor on a similar basis as it claimed against USS (sic)."

Because no testimony was offered in the mediation proceeding, the sole 'evidence' presented by the parties was documentation contained in the Joint Exhibit Book prepared by the parties and transcripts of depositions taken in pre-hearing discovery.   USM rightfully believed the Joint Exhibit Book and deposition transcripts to be the exclusive source of information from which the parties would argue their position and on which Mr. Griffin would base his decision. The Joint Exhibit Book contained forty-seven exhibits, consisting of bid documents; USM's Purchase Order; drilling records; Wilson Downhole's invoices; and communications between the parties relating to the drilling and the payment dispute, including the Conti letter.   USM Affidavit, ¶ 4.

The Joint Exhibit Book contained absolutely no information about, or support for, unpaid subcontractor costs, other costs alleged to be unpaid or about Wilson Downhole's profit margin. *Id.*, ¶ 5.  Likewise, the deposition testimony of Paul Conti or Mary Ann Black did not describe unpaid subcontractor costs or other costs or performance, or Wilson Downhole's profit margin or the insufficiency or unfairness of its profit, or assert a claim against USM for costs or additional profit. *Id.*, ¶ 6.

The Conti letter [Exhibit J] explained Wilson Downhole's specific damages as: (1) $30,000 for drilling rig mobilization and de-mobilization; (2) $4,256.40 for lost tools and third-party charges; (3) $51,675 for stand-by and non-drilling time; and (4) $79,890 for footage drilled in coal beyond 3,000 feet. [12] None of the damages enumerated in the Conti letter was attributed to, or sought recovery of, unpaid subcontractor costs, other costs of performance or any profit margin to which Wilson Downhole claimed to be entitled. USM Affidavit, ¶ 7.

Contrary to the intention of the parties and the purpose of the Joint Exhibit Book, Wilson Downhole offered information to Mr. Griffin about unpaid subcontractor costs and an allegedly insufficient profit margin. From its post-hearing submission, and from the Award itself, it is apparent that Wilson Downhole, through Mary Ann Black's 'testimony' at mediation, requested recovery based on allegedly unpaid costs and a 'fair' profit from the contract, which USM impliedly had denied.

That damage information and request for recovery was fraudulently conveyed by Wilson Downhole and fraudulently concealed by Mr. Griffin is demonstrated on the face of Wilson Downhole's post-mediation submission. Exhibit E to Petition. According to Wilson Downhole's submission, Mary Ann Black "testified that Wilson needed $165,821.70 to recover Wilson's out-of-pocket expenses paid on USS's (sic) behalf." *Id.*, at 1.

---

[12] The Conti letter does not explain the meaning or amount of 'third party charges.' The totality of the letter and the context of the reference to 'lost tools and third-party charges' demonstrates that he was not referring to subcontractor costs or other significant costs of performance incurred by Wilson Downhole and that were not paid or reimbursed by USM. In fact, USM had paid Wilson Downhole the $4,256.40 claimed in the Conti letter.

In the same submission, Wilson Downhole advanced a legally deficient quantum meruit claim "for the fair market value of the services Wilson provided to USS at the Pinnacle Field." Exhibit E, Confidential Final Offer Memorandum, at 2. Under the caption 'Quantum Meruit,' Wilson Downhole reiterated the information provided secretly by Mary Ann Black to Mr. Griffin at mediation:

> Ms. Black _testified_ at the mediation that Wilson's $165,821.70 settlement offer in early 1999 represented only a 0.25% profit margin for Wilson for all the work performed on the last three wells at Pineville. Wilson, therefore, was willing to settle for a profit of less than $5,000.00 on a million dollar job, simply to cover the third-party expenses Wilson incurred on USS's behalf. It cannot be disputed that such a minimal profit is at least a fair and reasonable value of Wilson's services. (emphasis added). [13]

_Id._

No information regarding unreimbursed costs of performance or Wilson Downhole's profit margin, or quantum meruit recovery, was shared with USM in the course of the mediation by Mary Ann Black or by Wilson Downhole's counsel or, more critically, by Mr. Griffin. USM Affidavit, ¶¶ 8, 9.

Mary Ann Black's damage 'testimony' was unsubstantiated and legally deficient. Under West Virginia law – and generally accepted contract principles – Wilson Downhole's express contract with USM nullified any quantum meruit claim or recovery. _Rosenbaum v. Price Construction Company_, 117 W.Va. 160, 165, 184 S.E. 261 (1936). [14]

---

[13] The 'settlement offer' described by Wilson Downhole was the Conti letter and explanation that Wilson Downhole was owed $165,821.70.

[14] Assuming that USM owed Wilson Downhole additional moneys for drilling services under the completed contract, Wilson Downhole was entitled to receive only those moneys that USM was obligated to pay under the contract. That measure of damages is the difference between what USM was obligated to pay Wilson Downhole for its services, and the costs incurred by Wilson Downhole in rendering its performance. This is the recognized law of West Virginia. _Ohio Valley Builders Supply Company v. Wetzel Construction Company_, 108 W. Va. 354, 363, 364, 151 S.E. 1 (1929). This is also indisputable hornbook law, which preempts pursuit or recovery of more money than Wilson Downhole would have been paid under the drilling contract. In disregarding and failing to apply fundamental principles, which Mr.

Most significantly, Mary Ann Black's account directly contradicted Wilson Downhole's damage summary contained in the Conti letter and all other documentation that had been provided to USM. Comparing the Conti letter, which detailed Wilson Downhole's damages without any reference to unpaid costs or profit margin, to Mary Ann Black's version of damages, makes it abundantly clear both that Mary Ann Black's explanation was false in its content and fraudulent in its communication to Mr. Griffin. Consideration by Mr. Griffin, as admitted in the Award, without advising USM that such damage information or theories had been presented by Wilson Downhole, likewise was dishonest and unfair.

In purpose and effect, Wilson Downhole's Mary Ann Black's oral account is analogous to perjured testimony. Perjured testimony constitutes fraud. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir. 1988) (the perjury of an expert witness in exaggerating his credentials influenced the arbitrator's decision, causing the court to vacate award).

Ex parte discussions with Mr. Griffin were a natural function of the mediation and informal arbitration. Exhibit D to Petition, ¶ 3. However, concealment of material information was not justified by the informality of the arbitration, or by Wilson Downhole's ex parte communications with Mr. Griffin. Open and honest communication by Wilson Downhole to Mr. Griffin and, in turn, Mr. Griffin to USM was made more critical by the fact that, however informal, this was a binding arbitration in which Mr. Griffin was empowered to decide the dispute.

---

Griffin certainly recognized, he committed manifest legal error compelling vacatur of the Award. *Local Union 1160 v. Busy Beaver Building Centers, Inc.*, 616 F. Supp. 812 (W.D. Pa. 1985).

The failure and refusal of Wilson Downhole and Mr. Griffin to disclose the information and to give USM an opportunity to refute the information, and underlying theory of cost reimbursement, constitutes fraud and undue means. *Commonwealth Coatings Corporation v. Continental Casualty Company*, 393 U. S. 145, 89 S. Ct. 337 (1968) (failure of disclosure of business dealings, undermining "the strict morality and fairness" expected from both the arbitrator and the parties, compelled vacation); *Pacific Crown Distributors v. Brotherhood of Teamsters and Auto Truck Drivers, Local 70*, 183 Cal. App.3d 1138, 1144, 228 Cal. Rptr. 645 (1986). [15]

In *Pacific Crown Distributors* case, defendant, Brotherhood of Teamsters and Auto Truck Drivers (hereinafter "Union"), presented to the arbitrator for the first time in its post-arbitration hearing brief a section of the collective bargaining agreement that the parties had agreed would not be raised at the hearing. The arbitrator included in his award a remedy based upon that section. Pacific Crown Distributors, the employer, had no opportunity to refute defendant's use and interpretation of the disputed section. The court found that the Union had gained an unfair advantage and, moreover, that its conduct "intentionally and fraudulently deprived [Pacific Crown Distributors] of its opportunity to present evidence in arbitration ….." *Id*. at 1149. Ruling that Pacific Crown Distributors

---

[15]  In vacating an arbitration Award for fraud, corruption and undue means, the California court in the *Pacific Crown Distributors* case expressly noted the connection between California and federal arbitration standards:

> Code of Civil Procedure section 1286.2 (dealing with corruption, fraud and undue means), when added in 1961, was based on the Federal Arbitration Act, 9 United States Code section 10(a), which similarly allows for judicial vacation of an arbitration award "procured by corruption, fraud, or undue means."

*Id*. at 1147.

had been denied a fair and impartial hearing by the Union's fraudulent conduct, the court confirmed vacatur.

Similarly, USM had no opportunity to discover or to respond to Wilson Downhole's secretive information or tactics calculated to deny that opportunity. It was not until Mr. Griffin was asked to explain his reasoning, and he so explained his reasoning on March 29, that USM learned what had transpired at the mediation and Mr. Griffin's reliance placed on damage information fraudulently offered to him and fraudulently concealed by him at mediation. Mr. Griffin may have had great discretion in his conduct of the mediation and the weight assigned to the information provided by the parties. However, he was not justified in receiving and concealing information from USM in the course of the mediation, and then relying on that very information in ruling against USM. *Pacific Crown Distributors v. Brotherhood of Teamsters and Auto Truck Drivers, Local 70*, 183 Cal. App.3d at 1149.

USM had every right to know each basis of Wilson Downhole's damage claim, and Mr. Griffin's assessment of each such basis. USM was told neither. Mr. Griffin had no right or reason to consider completely undocumented damage claims and theories, or to make a decision regarding damages without ever telling USM that he was given such information and that he intended to rely on that information. [16]

---

[16] The Fifth Circuit has vacated an award in an arbitration case in which the panel awarded damages not identified or expressly sought by the claimant. *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 651, 652 (5th Cir. 1979) (awarding of damages not sought by claimant ignores the arbitral dispute and is arbitrator's own brand of justice).

## VI. Conclusion

The foregoing legal and factual analysis demonstrates that the Award is highly improper and unfair under both statutory and judicial standards, and should be vacated.

Oral argument is requested.

Respectfully submitted,

Yukevich, Marchetti, Liekar & Zangrilli, P.C.

By:    /s/  *Albert J. Zangrilli, Jr.*
_____
Albert J. Zangrilli, Jr., Esquire
Pa. I.D. 15929

11 Stanwix Street, Suite 1024
Pittsburgh, PA  15222-1324
(412) 261 - 6780
email: azangrilli@ymlz.com


        /s/    *Anthony F. Jeselnik*
_____
Anthony F. Jeselnik, Esquire
Pa. I.D. 20650

Law Department
United States Steel Corporation
U. S. Steel Tower, Fifteenth Floor
600 Grant Street
Pittsburgh, PA  15219
(412) 433 - 2962
email: afjeselnik@uss.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of August, 2006, a true and correct copy of the foregoing Brief of U.S. Steel Mining Company, LLC has been served upon each of the following counsel of record electronically:

Geoffrey H. Bracken, Esquire
Gardere Wynne Sewell LLP
Wells Fargo Plaza
1000 Louisiana, Suite 3400
Houston, TX   77002-5007

Kimberly A. Brown, Esquire
Thorp Reed & Armstrong
One Oxford Centre, 14th Floor
301 Grant Street
Pittsburgh, PA   15219-1425

/s/   *Anthony F. Jeselnik*
_____

Anthony F. Jeselnik, Esquire