IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S. STEEL MINING COMPANY, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 00cv1758 |
| | ) | |
| WILSON DOWNHOLE SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

October 5, 2006

Presently before the Court are the following motions:

•  PETITION TO VACATE ARBITRATION AWARD, with brief in support filed by Plaintiff, U.S. Steel Mining Company, L.L.C., and Response in Opposition filed by Defendant, Wilson Downhole Services; and

•  MOTION TO CONFIRM ARBITRATION AWARD filed by Defendant, Wilson Downhole Services, Response in Opposition filed by Plaintiff U.S. Steel Mining Company, L.L.C., and Reply Brief filed by Defendant, Wilson Downhole Services.

For the reasons that follow, the Court will deny the Petition to Vacate Arbitration Award and grant the Motion to Confirm Arbitration Award.

BACKGROUND

This matter was initiated on September 5, 2000, by the filing of a Complaint for Declaratory Judgment by U.S. Steel Mining Company, L.L.C. ("USM") against Wilson Downhole Services ("Wilson Downhole"), in which USM sought a ruling that it was not obligated to pay an additional $227,924.73 claimed by Wilson Downhole for certain drilling

services performed by Wilson Downhole in early 1998 at USM's Pinnacle Mine in Pinnacle, West Virginia.

On May 29, 2002, the parties entered into an Agreement of Reference to Arbitration ("Arbitration Agreement") and agreed that all of their claims would be submitted to arbitration. The Arbitration Agreement provided, in pertinent part, as follows:

- "The Court in the Pennsylvania Action shall retain jurisdiction of this matter for purposes consistent with this Agreement and the FAA."

- "Any Award or decision, shall be in writing signed by the arbitrator stating the reasons upon which the Award or decision is based and offering sufficient explanation of the Award or decision and the arbitrator's reasoning for such Award or decision. In the arbitrator's exclusive discretion, the final Award of the arbitrator may, but need not be, accompanied by separate findings of fact or conclusions of law."

*See Arbitration Agreement,* at ¶¶ 3, 14.

The parties agreed to proceed to arbitration in Atlanta, Georgia, and selected Harry L. Griffin, Jr., Esquire ("Arbitrator") of Atlanta as the arbitrator.

On June 18, 2002, the Court granted a consent Motion to Stay Proceedings pending arbitration.

On January 13, 2006, the parties amended the Arbitration Agreement to provide for "baseball-style arbitration" in the event that a "mutually agreed resolution of all claims" was not reached by midnight on January 26, 2006. Relevant portions of the Amendment are as follows:

- The parties agreed that Harry L. Griffin, Jr., would serve as both mediator and arbitrator with regard to their dispute;

2

- Mediation would occur on January 18-19, 2006, in Atlanta, Georgia;

- If the case failed to settle during mediation and had not settled by 12:00 PM Eastern Time, January 26, 2006, then a "baseball arbitration" would commence, wherein each party would submit its final and best settlement offer to the arbitrator, and the arbitrator would be required to choose one of the two numbers provided. The parties further agreed that the Arbitrator shall select the offer he deems fair and just based on all information and evidence within his possession or provided by the Parties;

- The Amendment stated that "the Parties anticipate that *ex parte* communications with the Arbitrator will occur during the course of the mediation;" and

- The parties agreed that the Agreement of Reference to Arbitration dated May 29, 2002, is hereby ratified and confirmed and shall remain in full force and effect except as otherwise provided for and modified in and by this Amendment.

*See Amendment to Agreement of Reference to Arbitration ("Amendment").*

Mediation was conducted in Atlanta on January 18 and 19, 2006. Settlement was not reached by the parties, and each party submitted its best and final offer to the Arbitrator. Wilson Downhole requested payment of $294,333.52, which consisted of damages of $165,821.70 and interest of $128,511.92; and USM offered payment of $56,000, including interest.

On March 10, 2006, the Arbitrator issued his award, in which he selected "one of the two last and best offers. . . and after due deliberation I am compelled to select Wilson's best and final offer of $294,333.52." *Exhibit G.* The Arbitrator further explained that "[h]ad I been assigned the task to issue an award, as arbitrator after a full evidentiary hearing, I would have arrived at a lesser and different amount, but it would have approached the amount proposed by Wilson Downhole Services, Inc." *Id.* The award did not provide any reasons for the

Arbitrator's selection of Wilson Downhole's best and final offer; however, the Arbitrator explained that he "considered providing the reasons for my selection. Upon reflection I elected not to do so. Whatever my reasons, the party whose offer I declined to select would disagree and could advance a multitude of reasons why I was incorrect in my rationale, or had overlooked persuasive contrary facts, but, in any event, would not be persuaded by my stated reasons." *Id.*

By letter dated March 20, 2006, USM requested that the Arbitrator provide the rationale for his decision. On March 29, 2006, the Arbitrator responded to USM's request and explained, in part, the rationale for his opinion and award. The Arbitrator explained that "normally I do not (and have not been asked to explain my selection in a baseball arbitration), I decided here to accede to your request." The Arbitrator then listed "some" of his considerations and further explained that "[t]hese were some of the matters I considered, and are, by no means, meant to be exhaustive." *Exhibit I.*

USM has filed the instant Petition to Vacate Arbitration Award in which it contends that the arbitration award should be vacated "on grounds of corruption, fraud and undue means under the Federal Arbitration Act and on separate, judicially created non-statutory grounds." Wilson Downhole counters that the Arbitrator's rulings and the award should be confirmed and final judgment should be entered in its favor.

### STANDARD OF REVIEW

When parties move to confirm or vacate an arbitration award, "the court's function in confirming or vacating a commercial arbitration award is severely limited." *Mutual Fire,*

*Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989) (internal citation and quotations omitted). Courts will set aside arbitral awards only in "very unusual circumstances," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995), and there is a "strong presumption" in favor of the arbitration award. *Mutual Fire*, 868 F.2d at 56.

In fact, under the Federal Arbitration Act, the arbitration award may only be vacated on the following narrow grounds:

1. Where the award was procured by corruption, fraud, or undue means.

2. Where there was evident partiality or corruption in the arbitrators, or either of them.

3. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

4. Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In addition to these statutory grounds, the Court of Appeals for the Third Circuit has also recognized that an arbitration award may be vacated if the arbitrators displayed a "manifest disregard" of the law, *First Options*, 514 U.S. at 942; *Roadway Package System, Inc. v. Kayser,* 257 F.3d 287, 291 n.2 (3d Cir. 2001), which means that the arbitral award was "completely irrational." *Mutual Fire*, 868 F.2d at 56. As articulated by the appellate court, the standard of review is stringent and restrictive. *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995) (vacation allowed only if there is "absolutely no support at all in the record justifying the arbitrator's determinations") (citation omitted).

A court may not overrule an arbitrator "simply because it disagrees" with the

arbitrator's interpretation of the law. *United Trans. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995). Even where the Court is convinced that the arbitrator has committed serious error, the award must be enforced unless there is "absolutely no support at all in the record justifying the arbitrator's determinations." *Id.*; *see also Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of America*, 896 F.2d 745, 748 (3d Cir. 1990) (even where the support is "slender," if the record reveals "some basis for the arbitrator's conclusion . . . the inquiry is over.").

## DISCUSSION

USM has filed the instant Petition to Vacate Arbitration Award in which it contends that the arbitration award should be vacated "on grounds of corruption, fraud and undue means under the Federal Arbitration Act" and because of the "utter irrationality and arbitrariness [of the] fatally tainted Award." USM Br. at 11. Additionally, USM contends that the Arbitrator committed a "manifest error of law." The Court cannot agree and finds and rules that the instant case is not that rare case in which judicial revision of an arbitration award is appropriate.

In support of its allegations, USM raises a litany of claims, which largely fall into two categories: factual disputes with the Arbitrator's decision[1] and allegations that the arbitrator engaged in misconduct. Wilson Downhole responds that USM's allegations are without merit and do not warrant vacating the arbitration decision. After a thorough review of all the submissions in this case, the Court concludes that none of the claims raised by USM

---

[1] For example, USM argues that the "stated reasons were so grievously wrong and irrational that the Award was tainted irreparably." Br. at 11.

warrants judicial revision of the arbitration award.  Accordingly, the Court agrees with Wilson Downhole.

USM argues that "Mr. Griffin's reliance on the amount of Wilson Downhole's claim in making his award is manifestly irrational and prejudicial." Petition, at ¶ 47.  USM seems to overlook the parties' express agreement to resolution of this matter by "baseball arbitration." As the Arbitrator explained in his March 29, 2006 letter to the parties,

> "Had I served as arbitrator as contemplated by the <u>Reference</u>, I would have made an independent decision on the facts and law and issued a reasoned award accordingly.  The <u>Amendment to the Agreement of Reference to Arbitration</u> of January 13, 2006 did not permit me to make such independent decision but required me to select one of the two 'final and best offers' submitted by the parties.  I did this and even stated in my March 10, 2006 letter selecting Wilson's offer that had I served as an arbitrator in a typical arbitration hearing, not as a mediator/baseball arbitrator with very proscribed authority, I would not have arrived at the same result."

*Exhibit I.*

The Court finds that USM has not provided any evidence which demonstrates that the Arbitrator's award was  "manifestly irrational and prejudicial."  Rather, pursuant to the Amendment, the record reflects that the Arbitrator had a very proscribed authority which did not permit him to make an independently calculated award, but rather required him to select one of the two "final and best offers" submitted by the parties.  The Court finds and rules that the record reflects that USM has a difference of opinion with the Arbitrator, which does not constitute sufficient grounds for overturning the decision rendered by an arbitrator.

Next, USM vaguely contends that the arbitration award is the result of "corruption, fraud, or undue means."  "[C]ourts must be slow to vacate an arbitral award on the ground of fraud." *Foster v. Turley,* 808 F.2d 38, 42 (10th Cir. 1986).  "The party asserting fraud must

establish by clear and convincing evidence and must show that due diligence could not have resulted in discovery of the fraud prior to arbitration." *Id.* Courts have held that there must be a nexus between the alleged fraud and the basis for the arbitrator's award. *Forsythe International, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (5th Cir. 1990).

In his March 29, 2006 letter to the parties, the Arbitrator explained that among his considerations in selecting Wilson Downhole's offer was "evidence that Wilson paid its subcontractor on a similar basis as it claimed against USS (sic)." USM contends that any damage information was "fraudulently offered to [the Arbitrator] and fraudulently concealed by him at mediation." USM Br. at 19. According to USM, "the sole 'evidence' presented by the parties was the documentation contained in the Joint Exhibit Book prepared by the parties and transcripts of depositions taken in pre-hearing discovery" and this documentation contained no information about unpaid subcontractor costs. Further, USM contends that it "had every right to know each basis of Wilson Downhole's damage claim, and Mr. Griffin's assessment of each such basis." Brief at 19. The Court, however, finds this argument to be without merit.

The plain language of the Amendment, provides as follows:

The Parties anticipate that *ex parte* communications with the Arbitrator will occur during the course of the mediation. The Parties agree that the Arbitrator, in evaluating each Party's best and final offer, **may rely on information he deems relevant, whether obtained in an *ex parte* communication or otherwise**, in making the final Award.

*See Amendment,* ¶ *1.F* (emphasis added). Although USM had made the bald assertion that this information was "fraudulently conveyed" and "fraudulently concealed," the Court finds that USM has produced absolutely no evidence, much less clear and convincing evidence, in support of its allegation. The plain language of the Amendment reflects that the parties agreed

that the Arbitrator could rely on information which he deemed relevant, whether obtained in *ex parte* communication or otherwise. Therefore, the Court finds USM's argument to be without merit.

In sum, the Court finds and rules that none of USM's claims warrant vacatur of the adverse arbitration decision entered against it. The record reflects that the Arbitrator, pursuant to the Amendment to Agreement of Reference to Arbitration, considered each party's "final and best settlement offer" and chose one of the two offers, as he was duty bound to do. The Court further finds and rules that the award of the Arbitrator is clearly derived from the Arbitration Agreements, specifically the provision in the Amendment that provides for "baseball arbitration."

## CONCLUSION

For the reasons hereinabove stated, the Petition to Vacate Arbitration Award will be denied and the Motion to Confirm Arbitration Award will be granted.

An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| U.S. STEEL MINING COMPANY, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 00cv1758 |
| | ) | |
| WILSON DOWNHOLE SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER OF COURT**

AND NOW, this 5th day of October, 2006, it is hereby **ORDERED**, **ADJUDGED AND DECREED** that Plaintiff's Petition to Vacate Arbitration Award is **DENIED** and Defendant's Motion to Confirm Arbitration Award is **GRANTED.**

It is further **ORDERED, ADJUDGED AND DECREED** that U.S. Steel Mining Company, L.L.C., shall pay to Wilson Downhole Services the sum of $294,333.52, with interest accruing on any unpaid amount at the federal rate of 5% per annum from March 10, 2006 until paid in full.

All court costs are to be taxed to U.S. Steel Mining Company, L.L.C.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:  Albert J. Zangrilli, Jr., Esquire
    Yukevich, Marchetti, Liekar & Zangrilli
    Email: azangrilli@ymlz.com

    Anthony F. Jeselnik, Esquire
    United States Steel Corp. - Law Department
    Email: afjeselnik@uss.com

    Mark Fischer, Esquire
    Yukevich, Marchetti, Liekar & Zangrilli
    Email: mfischer@ymlz.com

    Geoffrey H. Bracken, Esquire
    Gardere Wynne Sewell
    Email: gbracken@gardere.com

    Kimberly A. Brown, Esquire
    Thorp, Reed & Armstrong
    Email: kbrown@thorpreed.com